**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>**Michelle Letellier**</u>

      **v.**                                    Civil No. 13-cv-271-PB
                                        Opinion No. 2014 DNH 052
<u>**Commissioner of Social Security
Administration**</u>

<u>**MEMORANDUM AND ORDER**</u>

Michelle Letellier seeks judicial review of a ruling by the
Commissioner of the Social Security Administration ("SSA")
denying her application for Supplemental Security Income ("SSI")
and Disability Insurance Benefits ("DIB").  Letellier claims
that the Administrative Law Judge ("ALJ") lacked substantial
evidence to support his finding that she was not disabled.
Letellier also claims that the ALJ failed to adequately consider
and appropriately weigh the opinions of medical sources when
making his residual functional capacity ("RFC") assessment.

For the reasons set forth below, I reverse the decision of
the Commissioner and remand for further administrative
proceedings.

# I.   BACKGROUND[1]

## A.   Procedural History

Letellier applied for SSI and DIB on December 8, 2010, claiming that she became disabled due to a back injury on November 13, 2010.  Tr. at 183, 190.  The SSA denied Letellier's claims on April 27, 2011.  Tr. at 88, 91.  Letellier requested a hearing before an ALJ, which was held on May 7, 2012.  She was represented by an attorney at the hearing, at which a vocational expert ("VE") testified.  Letellier presented new evidence at the hearing regarding several impairments in addition to her back injury.  On May 25, 2012, the ALJ issued a decision finding Letellier not disabled on or after her alleged disability onset date.  The Appeals Council denied Letellier's request for review on April 29, 2013.  Accordingly, the ALJ's decision is the final decision of the Commissioner.

## B.   Relevant Medical History[2]

Several health care providers who treated Letellier for her physical ailments between 2007 and 2012 made note of her mental

---

[1] The background facts are presented in the parties' Joint Statement of Material Facts (Doc. No. 12) and are summarized here.  I also rely on the Administrative Transcript (Doc. No. 6), citations to which are indicated by "Tr.".

[2] Because the ALJ's treatment of Letellier's alleged mental impairments requires remand, I need not discuss her various physical impairments.

state during examinations.  During numerous visits to Coos
County Family Health Services during this period, Letellier
complained of depression, anxiety, and panic attacks.  Tr. at
436-521, 526-52, 996-1006.  Nevertheless, examination notes
indicate that she possessed intact judgment, insight, and
memory, was oriented to time, place, and person, and showed no
signs of depression or anxiety.  In 2009 and 2010, Letellier's
doctors at the Central Maine Pulmonary and Sleep Medicine
facility reported that she was consistently alert and
cooperative with normal mood, affect, attention span, and
concentration.  On November 29, 2010, Dr. Tiffany Pineda, M.D.,
noted that an examination of Letellier revealed intact memory
and normal attention and concentration.  Letellier's physical
therapist noted that her affect was flat on May 19, 2011.

    Dr. Cheryl Bildner, Ph.D., examined Letellier on March 2,
2011.  Tr. at 373-77.  Letellier reported a history of
depression and anxiety, but Dr. Bildner noted that Letellier was
not receiving treatment and had never been hospitalized for a
psychiatric condition.  Dr. Bildner nevertheless diagnosed
Letellier with depressive disorder (not otherwise specified) and
ruled out undifferentiated somatoform disorder.[3]  Upon

_____

[3] Unspecified depressive disorder involves "the presence of sad,

examination, Dr. Bildner reported that Letellier was alert,
oriented to person, place, time, and situation, and presented an
appropriate affect, intact thought process, and a fund of
knowledge and intelligence in the average range.  In contrast,
Letellier exhibited a depressed mood, low energy and motivation,
and variable attention, concentration, distractibility, and
insight.  Letellier could follow simple directions but became
tangential on several occasions and made errors on the Mini
Mental State Examination ("MMSE").[4]  Dr. Bildner noted that
Letellier was working as a personal care assistant for seven
hours a week and was able to perform most activities of daily
living, although some of these activities were limited or
modified.  In particular, Letellier showered daily, took her own
medications, drove, shopped, managed personal affairs, did

empty, or irritable mood."  Am. Psychiatric Ass'n, Diagnostic
and Statistical Manual of Mental Disorders 309-10 (5th ed. 2013)
[hereinafter DSM-V].  Undifferentiated somatoform disorder, now
known as unspecified somatic symptom and related disorder,
involves "the prominence of somatic symptoms" that "initial[ly]
present[] mainly in medical rather than mental health care
settings."  Id. at 155.  Both disorders "cause clinically
significant distress or impairment in social, occupational, or
other important areas of functioning . . . ."  Id. at 184, 327.

[4] The MMSE is "a screening test for global cognitive dysfunction
. . . . [that] taps frontal, spatial, and memory domains of
cognitive function.  It identifies subjects with a high
probability of moderate to severe global cognitive impairment."
Robert J. Campbell, Campbell's Psychiatric Dictionary 616 (9th
ed. 2009).

laundry, and prepared meals.  Dr. Bildner concluded that
Letellier was able to interact appropriately with others,
communicate effectively, understand and remember locations and
work-like procedures, understand basic instructions, and make
simple decisions.  She determined that Letellier was unable to
sustain attention and concentration for extended periods of time
due to fatigue and distractibility, had poor motivation which
interfered with task completion, had a delayed pace of
completion, was unable to tolerate stress associated with a
workplace, and was unable to maintain a full-time established
schedule.

On March 8, 2011, Dr. Laura Landerman, Ph.D., conducted a
review of Letellier's complete medical record.  Tr. at 378-94.
Dr. Landerman noted that Letellier's statements were credible
and gave great weight to some of Dr. Bildner's findings,
including her diagnosis of a depressive disorder.  Dr. Landerman
found that Letellier had not experienced any episodes of
decompensation of extended duration.  She determined that
Letellier was mildly limited in her social functioning and
activities of daily living, but moderately limited in her
ability to maintain concentration, persistence, or pace, to
understand, to remember, and to adapt.  Dr. Landerman found that

Letellier was able to remember locations and work-like
procedures, make simple work-related decisions, function
effectively without special supervision, maintain a schedule and
appropriate attendance, sustain attention and concentration for
two-hour periods, persist to task and pace within a normal
eight-hour workday and forty-hour workweek without an undue
number of interruptions from psychological symptoms, and
accommodate to simple and routine changes in the workplace.  She
concluded that Letellier could interact with co-workers, but
would fare better with a gentle, supportive, non-confrontational
supervisor, and that she could understand, recall, and carry out
short and simple instructions, but would be "unable to
consistently do so with more complex and detailed ones."  Tr. at
394.

     After Drs. Bildner and Landerman had completed their
assessments, Letellier began attending periodic therapy sessions
with Janice MacKenzie, a licensed clinical social worker.  Tr.
at 425-35.  On November 15, 2011, Ms. MacKenzie completed a
medical source statement based on her observations of Letellier
over the previous five months.  Id.  She diagnosed Letellier
with recurrent, moderate major depressive disorder in addition
to anxiety disorder (not otherwise specified) with posttraumatic

traits.[5]  Ms. MacKenzie assessed Letellier's global level of

functioning as indicative of "flat affect and circumstantial

speech[ with] occasional panic attacks[, or] moderate difficulty

in social[ or] occupational . . . functioning (e.g., few

friends[ and] conflicts with peers or co-workers)."[6]  A mental

status examination revealed that Letellier possessed intact

memory, rational and organized thought process and content, sad

or depressed mood, appropriate affect, and good insight,

orientation, and judgment.  Ms. MacKenzie concluded that

Letellier was markedly limited in her ability to understand,

remember, and carry out detailed instructions, to maintain

---

[5] Unspecified anxiety disorder involves "excessive fear and
anxiety and related behavioral disturbances" that cause
"clinically significant distress or impairment in social,
occupational, or other important areas of functioning . . . ."
DSM-V, supra note 3, at 189, 233.  Posttraumatic traits may
include "[d]evelopmental regression," "[a]uditory pseudo-
hallucinations," "paranoid ideation," "difficulties in
regulating emotions or maintaining stable interpersonal
relationships," and "dissociative symptoms."  Id. at 276.

[6] This is the narrative description of Letellier's Global
Assessment of Functioning ("GAF") score, which Ms. MacKenzie
assessed as fifty-six.  See Am. Psychiatric Ass'n, Diagnostic
and Statistical Manual of Mental Disorders 34 (4th ed. text rev.
2000).  The SSA has remarked that the GAF Scale "does not have a
direct correlation to the severity requirements in our mental
disorders listings," Revised Medical Criteria for Evaluating
Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg.
50,746, 50,764-65 (Aug. 21, 2000), and the American Psychiatric
Association no longer recommends use of the GAF Scale due to
"its conceptual lack of clarity . . . and questionable
psychometrics in routine practice."  DSM-V, supra note 3, at 16.

attention and concentration sufficient to perform work tasks
throughout an eight-hour workday, to complete a normal workday
and workweek without interruptions from psychologically based
symptoms, and to perform at a consistent pace without an
unreasonable number and length of rest periods.

C.   **Administrative Hearing — May 7, 2012**[7]

    1.   Letellier's Testimony

     In addition to her testimony regarding various physical
impairments, Letellier testified that she experienced anxiety
and stress.  She noted that she had never been hospitalized for
a psychological condition, but she participated in therapy once
a week, took medication for anxiety, and had been prescribed
Klonopin[8] for panic attacks.  She reported that she had

---

[7] Letellier's motion to reverse, a letter from Letellier's
attorney to the Appeals Council, and an amended notice of
hearing from the Commissioner all mention St. Johnsbury, Vermont
as the hearing location.  Doc. No. 8; Tr. at 6, 163.  If true,
this would raise the question whether the ALJ applied the
relevant law as it has been interpreted in the Second Circuit.
His decision cites no cases to clarify the matter.  The hearing
transcript lists the location as Manchester, New Hampshire,
however, and both Letellier and the Commissioner primarily rely
on First Circuit cases to support their arguments.  Doc. Nos. 8,
11-1, 13; Tr. at 26-28.  I therefore assume that the ALJ applied
the law as interpreted in the First Circuit and I review his
decision accordingly.

[8] Klonopin is used "as an antipanic agent in the treatment of
panic disorders."  Dorland's Illustrated Medical Dictionary 379,
1003 (31st ed. 2007).

difficulty shopping for groceries and cleaning the shower but was able to perform light housekeeping, vacuum, cook, work part-time, and babysit her nephews on occasion.

> 2.  <u>Vocational Expert Testimony</u>

The ALJ first asked the VE to assume a person who could perform light work with the following additional limitations: understanding, remembering, and carrying out moderately complex four-to-five step instructions, making simple work-related decisions, adapting to routine workplace changes, maintaining focus for a two-hour period, working routinely with the public but not in an intense manner on a sustained basis, occasionally performing postural activities, but never climbing ladders, ropes, or scaffolds.  The VE testified that a person with these limitations could perform Letellier's past work as a personal care attendant and sales clerk.  When asked whether any unskilled jobs exist for an individual with the above limitations and Letellier's age, education, and work experience, the VE testified that such a person could work as a bench worker, inserter/packer, and mail clerk.  When the ALJ added that the individual would not be able to perform activities requiring repetitive reaching or fine manipulation, the VE testified that such a person could work as a mail clerk, charge-

account clerk, and order clerk.  The VE noted the number of positions existing in the regional and national economies for all of the aforementioned positions.

**D.    The ALJ's Decision**

In his decision dated May 25, 2012, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) to determine whether an individual is disabled.  At step one, the ALJ noted that Letellier had worked part-time as a personal care attendant during the alleged disability period, but he concluded that this work did not generate earnings sufficient to rise to the level of substantial gainful activity.  At step two, the ALJ found that Letellier had the following severe impairments: fibromyalgia, sciatica, sleep apnea, depression, and anxiety. At step three, the ALJ found that Letellier did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ then found that Letellier retained the Residual Functional Capacity ("RFC") to perform light work per 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to a number of specific limitations including the following:

> [Letellier] . . . can understand, remember and carry
> out moderately complex 4-5 step instructions, can make

> simple work related decisions, can adapt to routine
> changes in the work environment, can maintain focus
> for 2 hours at a time and she can interact with the
> public in routine matters, but not in intense matters
> on a sustained basis.

Tr. at 17.  The ALJ followed a two-step analysis to develop

Letellier's RFC.  First, he considered whether she suffered from

any medically determinable impairment.  He concluded that she

did, and that her impairments could reasonably be expected to

cause her alleged symptoms.  Second, he determined the extent to

which the intensity and persistence of Letellier's symptoms

limited her functioning.  The ALJ found Letellier's testimony

regarding "the intensity, persistence and limiting effects of

[her] symptoms . . . not credible to the extent [it was]

inconsistent with" his RFC determination.  Id.

The ALJ provided several reasons for concluding that

Letellier was not credible.  With respect to her mental

impairments, the ALJ explained that "objective mental status

examination documents depressed mood, but organized and goal

directed speech with normal rate and volume, appropriate affect,

intact thought process and orientation x3.[9]  Attention and

concentration were variable and she exhibited low motivation,

but she could follow simple directions."  Tr. at 18.  The ALJ

---

[9] "Orientation x3" denotes "awareness of one's environment with
reference to place, time, and people."  Id. at 1356.

also emphasized that Letellier's activities of daily living were consistent with his RFC determination.  Tr. at 19.  He found Dr. Landerman's opinion to be deserving of significant weight because it is "well-supported and consistent with [Letellier's] presentation at the hearing," but he gave little weight to Ms. MacKenzie's determination that Letellier was markedly limited in her ability to manage detailed instructions because that conclusion "is not well supported by the objective finding of this treating source's own mental status examination, which found [Letellier's] memory to be intact and her thought process to be rational and organized."  Id.

Based on his RFC determination and the VE's testimony, the ALJ found at step four that Letellier was capable of performing her past relevant work as a personal care attendant and sales clerk.  He did not make an alternative step five finding. Accordingly, the ALJ concluded that Letellier was not disabled from her alleged onset date through the date of his decision.

## II. <u>STANDARD OF REVIEW</u>

Under 42 U.S.C. § 405(g), I must review the pleadings and the administrative record and enter a judgment affirming, modifying, or reversing the final decision of the Commissioner.

My review "is limited to determining whether the ALJ used the
proper legal standards and found facts [based] upon the proper
quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d
652, 655 (1st Cir. 2000).

The ALJ is responsible for determining issues of
credibility and for drawing inferences from evidence in the
record. Irlanda Ortiz v. Sec'y of Health & Human Servs., 955
F.2d 765, 769 (1st Cir. 1991) (per curiam) (citing Rodriguez v.
Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir.
1981)). It is the role of the ALJ, not the court, to resolve
conflicts in the evidence. Id. The ALJ's findings of fact are
accorded deference as long as they are supported by substantial
evidence. Id. Substantial evidence to support factual findings
exists "if a reasonable mind, reviewing the evidence in the
record as a whole, could accept it as adequate to support his
conclusion." Id. (quoting Rodriguez, 647 F.2d at 222). If the
substantial evidence standard is met, factual findings are
conclusive even if the record "arguably could support a
different conclusion." Id. at 770 (citing Rodriguez Pagan v.
Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987)
(per curiam)).

Findings are not conclusive, however, if they are derived by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Irlanda Ortiz, 955 F.2d at 769; Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam)).

## III.  ANALYSIS

Letellier moves for reversal and remand on three main grounds.  She argues that the ALJ (1) crafted a mental RFC that was less limiting than the unanimous assessment of the sources of record; (2) failed to state and explain the weight he gave to Dr. Bildner's medical opinion; and (3) failed to adequately weigh and evaluate the opinions of the remaining sources. According to Letellier, each error independently produced an erroneous RFC determination, rendering the ALJ's conclusion unsupported by substantial evidence.

I find that Letellier's first argument has merit. Consequently, I do not address her remaining arguments.

## A.   The ALJ's Mental RFC Determination is not Supported by Substantial Evidence

Letellier argues that the ALJ's RFC determination, which states that she can "understand, remember and carry out

14

moderately complex 4-5 step instructions," is inconsistent with every medical opinion of record.  Specifically, every opinion discussing Letellier's mental functioning includes a statement to the effect that she can only follow simple instructions on a sustained basis.  See Tr. at 374 (Dr. Bildner's opinion that Letellier "could follow simple directions"), Tr. at 394 (Dr. Landerman's opinion that Letellier could "carry out short and simple instructions" but could not "consistently do so with more complex and detailed ones"), Tr. at 434 (Ms. MacKenzie's opinion that Letellier could "carry out very short and simple instructions" on a sustained basis, but not detailed ones).[10] Lettelier argues that the ALJ erred by disregarding uncontroverted medical opinions in favor of his own lay opinion on the matter.  See, e.g., Nguyen, 172 F.3d at 35; Rosado v. Sec'y of Health & Human Servs., 807 F.2d 292, 294 (1st Cir. 1986) (per curiam).  She reasons that the ALJ's hypothetical question incorporating the "moderately complex instructions" language was inaccurate, that the VE's testimony based on that hypothetical was unreliable, and that the ALJ's conclusion that

---

[10] As the Commissioner notes, Ms. MacKenzie is not an acceptable medical source.  See 20 C.F.R. § 404.1513(a); 416.913(a). Nevertheless, her opinion on this point, which is based on her treatment relationship with Letellier, provides additional support for the opinions of Drs. Bildner and Landerman, who are acceptable medical sources.

she is not disabled because she can perform her past relevant work is consequently not supported by substantial evidence. See Arocho v. Sec'y of Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982) ("[I]n order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into the hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities.").

As the Commissioner has not disputed Letellier's contention that the ALJ's RFC determination was erroneous, I could simply accept that Letellier is correct and proceed to address the Commissioner's assertion that any such error was harmless. Because it may provide some guidance to the ALJ on remand, however, I examine the process by which his RFC was determined.

The ALJ offered the following explanation for his conclusion that Letellier could follow "moderately complex 4-5 step instructions" on a sustained basis:

> The medical source statement of treating therapist Janice Mackensie [sic] for marked limitation of the claimant's ability to handle detailed instruction is given only little weight and is given only some consideration in the limitations of the residual functional capacity because it is not well supported by the objective finding of this treating source's own mental status examination, which found the claimant's memory to be intact and her thought process to be rational and organized.

Tr. at 19.  There are two problems with this explanation.

16

First, although Ms. MacKenzie is not an acceptable medical source capable of providing a medical opinion to establish the existence of an impairment, see 20 C.F.R. §§ 404.1513(a); 416.913(a); SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006), she is a medical source capable of making objective medical findings and translating those findings into specific functional limitations. See 20 C.F.R. §§ 404.1513(d)(1); 416.913(d)(1); cf. Alcantara v. Astrue, 257 F. App'x 333, 335 (1st Cir. 2007) (per curiam); Couitt v. Astrue, 2012 DNH 066, 13-16. The ALJ, on the other hand, is not. See Nguyen, 172 F.3d at 35 ("As a lay person . . . the ALJ [i]s simply not qualified to interpret raw medical data in functional terms . . . ."). The ALJ's translation of Ms. MacKenzie's objective findings (that Letellier possessed an intact memory and a rational and organized thought process) into a specific functional limitation (the ability to manage moderately complex four to five step instructions) was impermissible, as it was contrary to Ms. MacKenzie's own conclusions on the matter.

To be sure, the ALJ would have been warranted in rejecting Ms. MacKenzie's conclusions if there was substantial evidence in the record – typically in the form of a conflicting opinion from

17

another medical source - to the contrary.[11]  But every other

medical source agreed with Ms. MacKenzie's opinion and the ALJ

provided no additional evidence to support his own conclusion.[12]

See id.; Gonzalez Maldonado v. Sec'y of Health & Human Servs.,

996 F.2d 1209 (1st Cir. 1993) (per curiam) (unpublished table

decision).  The ALJ therefore had no substantial evidence upon

which to base his conflicting RFC determination that Letellier

"can understand, remember and carry out moderately complex 4-5

step instructions."

**B.   The ALJ's Error was not Harmless**

The ALJ's error in crafting his RFC was not harmless.  As

an initial matter, it rendered his step four finding - that

---

[11] Indeed, the ALJ could have considered and rejected Ms.
MacKenzie's conclusions without providing any explanation for
doing so if there was other substantial evidence in the record
upon which he could rely.  See 20 C.F.R. §§ 404.1527; 416.927;
SSR 06-03P, 2006 WL 2329939, at *2, 5.  In this case, there was
not.

[12] Notably, the ALJ ultimately rejected the functional limitation
proposed by all three medical sources despite appearing to agree
with it elsewhere in his decision.  For instance, the ALJ stated
that Dr. Landerman's opinion, which notes that Letellier could
"carry out short and simple instructions" but could not
"consistently do so with more complex and detailed ones," see
Tr. at 394, was "well-supported and consistent with the claimant
[sic] presentation at the hearing and deserving of significant
weight."  Tr. at 19.  The ALJ also quoted Dr. Bildner's
statements that Letellier could "understand basic instructions"
and "follow simple directions," see Tr. at 374, 376, with
apparent approval in support of his step three and step four
findings.  See Tr. at 16, 18.

Letellier could perform her past relevant work – unsupported by
substantial evidence.  At the hearing, the ALJ advised the VE
that he was required to note any conflicts between his testimony
and the Dictionary of Occupational Titles ("DOT"), see Tr. at
68, and the VE never noted a deviation.  Based on the VE's
testimony - which was in turn based on the erroneous RFC - the
ALJ determined that Letellier could perform her past relevant
work as a personal care attendant, see DOT 309.677-010, and
sales clerk, see DOT 211.462-014.  The DOT states that both
positions require a General Educational Development ("GED")
Reasoning Level of three, meaning that each position requires a
worker to "[a]pply commonsense understanding to carry out
instructions furnished in written, oral, or diagrammatic form,"
as well as a Specific Vocational Preparation ("SVP") Level of
three, meaning that each position is generally considered semi-
skilled.  See SSR 00-4P, 2000 WL 1898704, at *3 (Dec. 4, 2000).
Both of these criteria exclude workers who can only follow
simple instructions from working in either position as it is
generally performed.[13]  See, e.g., King v. Comm'r of Soc. Sec.,

---

[13] The ALJ found that Letellier could work as a personal care
attendant and sales clerk both as those positions are generally
performed and as they were actually performed by Letellier.  Tr.
at 19.  He did not find that the positions as actually performed
differed in any way from their DOT descriptions.

No. 1:12-CV-1686 GLS, 2013 WL 5567112, at *3 (N.D.N.Y. Oct. 9, 2013); Mead v. Barnhart, 2004 DNH 161, 4-5.  The conclusion that Letellier was not disabled because she could perform her past relevant work was therefore erroneous.

Nevertheless, the Commissioner claims that any error at step four was harmless because the VE also identified unskilled jobs existing in significant numbers in the national and regional economies that Letellier can perform.  See 20 C.F.R. §§ 404.1568; 416.968; SSR 00-4P, 2000 WL 1898704, at *3 (correlating DOT job descriptions to skilled, semi-skilled, and unskilled work); see also Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (noting that the Commissioner "has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform").  The Commissioner claims that these unskilled jobs can be performed by an individual who can only follow simple instructions.  See Polanco-Quinones v. Astrue, 477 F. App'x 745, 746 (1st Cir. 2012) (per curiam) ("[T]he basic mental demands of unskilled work [include] 'the abilit[y] (on a sustained basis) to understand, carry out, and remember simple instructions . . . .'" (quoting SSR 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985))); see also Tr. at 85 (Disability Determination Service opinion

that Letellier is "capable of unskilled work" but "unable to
perform [her] past type of work").  In the Commissioner's view,
the ALJ would have reached the same conclusion had he crafted an
accurate RFC and proceeded to step five of the sequential
evaluation process.

Letellier responds that a reviewing court may not apply the
harmless error doctrine to affirm an ALJ's decision on a ground
other than that relied on by the ALJ.  See, e.g., Pinto v.
Massanari, 249 F.3d 840, 847 (9th Cir. 2001) (citing SEC v.
Chenery Corp., 332 U.S. 194, 196 (1947)).  As a general rule,
that is correct.  But an exception exists when any reasonable
ALJ applying the correct standard would have necessarily reached
the same conclusion.  Ward, 211 F.3d at 656 (remand is not
necessary if it would "amount to no more than an empty exercise"
because "application of the correct legal standard could lead to
only one conclusion" (quoting Schaal v. Apfel, 134 F.3d 496, 504
(2d Cir. 1998))); accord Fischer-Ross v. Barnhart, 431 F.3d 729,
733-34 (10th Cir. 2005) (although harmless error analysis must
be used cautiously in the administrative setting, it is
appropriate "where, based on material the ALJ did at least
consider (just not properly), we could confidently say that no
reasonable administrative factfinder, following the correct

analysis, could have resolved the factual matter in any other way" (quoting Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004))).  Nonetheless, it is a bridge too far to employ the harmless error doctrine to affirm an ALJ's decision on grounds that were likely considered by the ALJ, but were not expressly discussed in the decision.  Such speculation would permit a reviewing court to play factfinder, but that is a function delegated exclusively to the administrative agency.  See, e.g., Chenery, 332 U.S. at 196.

The parties have not cited, and I am not aware of, any case in which a reviewing court affirmed an ALJ's decision on the basis of a hypothetical administrative finding that the ALJ did not expressly make in his or her decision.  Numerous courts have refused the Commissioner's invitation to do just that.  See, e.g., Andry v. Colvin, No. 2:12-CV-00746-KJN, 2013 WL 5305903, at *8 (E.D. Cal. Sept. 19, 2013); Mann v. Comm'r of Soc. Sec., No. 6:12-CV-1276-ORL-GJK, 2013 WL 4734822, at *3 (M.D. Fla. Sept. 3, 2013); Shortridge v. Astrue, No. 1:11-CV-71-MP-GRJ, 2012 WL 1598012, at *7 (N.D. Fla. Apr. 3, 2012), rep. & rec. adopted, 2012 WL 1597518 (N.D. Fla. May 7, 2012); Cabreja v. Astrue, No. 11-130-ML, 2012 WL 272746, at *6 (D.R.I. Jan. 27, 2012); Smith v. Astrue, No. C11-5386-JCC-BAT, 2012 WL 440826, at

*3 (W.D. Wash. Jan. 11, 2012), rep. & rec. adopted, 2012 WL
439419 (W.D. Wash. Feb. 10, 2012); Burton v. Astrue, No. 11-
1776-SP, 2012 WL 12742, at *4 (C.D. Cal. Jan. 3, 2012); Chiasson
v. Astrue, 2010 DNH 211, 16-18; Vining v. Astrue, 720 F. Supp.
2d 126, 128 (D. Me. 2010); Holt v. Astrue, No. 08-2410-KHV, 2009
WL 3807082, at *8-9 (D. Kan. Nov. 12, 2009); cf. Brun v.
Barnhart, 126 F. App'x 495 (1st Cir. 2005) (per curiam)
(unpublished table decision) (citing SEC v. Chenery Corp., 318
U.S. 80 (1943)) (appropriate to apply the harmless error
doctrine to affirm on an alternative ground that the ALJ
expressly considered in the decision); Guranovich v. Astrue, 465
F. App'x 541, 543 (7th Cir. 2012) (per curiam) (same); Mason v.
Astrue, 2013 DNH 013, 15-16 (same).  In all of the harmless
error cases cited by the Commissioner, the reviewing court
identified express findings in the ALJ's decision that were
untainted by the error and independently sufficient to support
the ALJ's ultimate decision.  See Hines v. Astrue, No. 11-CV-
184-PB, 2012 WL 1394396, at *6 (D.N.H. Mar. 26, 2012), rep. &
rec. adopted sub nom. Hines v. U.S. Soc. Sec. Comm'r, 2012 WL
1393063 (D.N.H. Apr. 20, 2012); Norwood v. Astrue, No. CV-09-
3996-RC, 2010 WL 2509358, at *3 (C.D. Cal. June 17, 2010);

Mitchell v. Astrue, No. CA-07-229 ML, 2009 WL 50171, at *12 (D.R.I. Jan. 7, 2009).  Hence, those cases are inapposite.

If the ALJ had made an alternative, on-the-record step five finding, harmless error analysis would clearly be appropriate. But he did not, and it is not my role to do so for him.  See, e.g., Holt, 2009 WL 3807082, at *9 ("[T]he court may not accept counsel's post hoc rationalization and affirm the decision on a basis other than that presented in the Commissioner's decision.").

### IV.   CONCLUSION

For the foregoing reasons, I deny the Commissioner's motion to affirm (Doc. No. 11) and grant Letellier's motion to reverse or remand (Doc. No. 8).  Pursuant to sentence four of 42 U.S.C. § 405(g), I remand the case to the Social Security Administration for further proceedings consistent with this decision.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


March 11, 2014

24

cc:    Tamara N. Gallagher, Esq.
       Karen B. Fitzmaurice, Esq.
       T. David Plourde, Esq.